UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCISCO EMETERIO,
*on behalf of himself,*
*FLSA Collective Plaintiffs and the Class,*

      Plaintiff,

      v.

A & P RESTAURANT CORP.
    d/b/a REMEDY DINER,
MODERN HOSPITALITY GROUP CORP.
    d/b/a JAX INN DINER,
ANASTASIOS GIANNOPOULOS,
and PETER GIANNOPOULOS,

      Defendants.

Case No.: 1:20-cv-00970 (JMF)(KHP)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION**

C. K. Lee, Esq.
Lee Litigation Group, PLLC
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

## I.  PLAINTIFF HAS SATISFIED THE MINIMAL STANDARDS REQUIRED FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION

It is well settled that "the standard for conditional collective action certification is not a stringent one." *Feng v. Hampshire Times*, No. 14-CV-7102 (SHS) (JLC), 2015 U.S. Dist. LEXIS 29899, 2015 WL 1061973, at *2 (S.D.N.Y. Mar. 11, 2015); *see also She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3946 (PAE), 2014 WL 5314822, at *2 (S.D.N.Y. Oct. 16, 2014) (holding that a low standard of proof is required at the conditional certification stage because its "purpose . . . is merely to determine whether 'similarly situated' plaintiffs do in fact exist."). Accordingly, this Court need only consider "whether the plaintiff[] ha[s] made an adequate factual showing to support an **inference** that such a uniform policy or practice exists, and whether the locations share common ownership or management." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (emphasis added).

In *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300 (D. Colo. 2015) ("*Turner I*"), a federal court convincingly demonstrated that the majority approach to collective certification under 29 U.S.C. § 216(b) is erroneous. Properly interpreted, 29 U.S.C. § 216(b) allows the "liberalized permissive joinder of any party plaintiff 'similarly situated.'" *Turner I*, 123 F. Supp. 3d at 1306. The **only** statutory prerequisites for joinder of a party plaintiff to a FLSA action under § 216(b) are: (1) written consent to become a party and (2) the filing of such written consent in the court where such action is brought. *Id.* Contrary to the majority view, party plaintiffs are **not** required make any evidentiary showing that they suffered as a result of a single policy or practice to deprive them of pay for notice to be sent to prospective opt-ins. *Id.* at 1309. Rather, in view of the protective purposes of the FLSA, and pursuant to the plain text of the statute, the Court should "presumptively allow workers bringing the same statutory claim against

the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous." *Id.*

If the Court is not persuaded by the convincing case for permissive joinder set forth in *Turner I*, the distribution of notice to all Covered Employees should nevertheless be ordered, because the initial pleadings and preliminary evidence demonstrate that all Covered Employees are "victims of a common policy or plan that violated the law." *Cuzco v. Orion Builders, Inc.*, 477, F. Supp. 2d 628, 633 (S.D.N.Y. 2007) (internal quotation omitted).

In the Second Circuit case, *Scott v. Chipotle Mexican Grill*, the court reaffirms the that the standard at the collective certification stage sets a lower bar to a collective than even joinder under rule 23 and 40. 954 F.3d 502, 515 (2d Cir. 2020) ("the FLSA not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42**").** Moreover, the case reaffirms that, unlike in motions for class certification under Rule 23, "dissimilarities in other respects should not defeat collective treatment." *Scott,* 954 F.3d at 515.

> **A.   Plaintiff Has Made a Modest Factual Showing to Support the Inference that Defendants Own and Operate the Restaurants as a Single-Integrated Enterprise**

Defendants implausibly argue in their Opposition that Remedy Diner and Jax Inn are separate and distinct enterprises, and that Plaintiff has not provided enough evidence to establish that Defendants are a single integrated enterprise. Yet nothing in their opposition contravenes, or can contravene, the relevant facts set forth by Plaintiff in his Memorandum. The most salient of these facts include the following:

- Defendants' active liquor licenses for the Restaurants reflect that the Individual Defendants, PETER GIANNOPOULOS and ANASTASIOS GIANNOPOULOS are principals of Remedy Diner and Jax Inn. *See* **Exhibit B**.

- At all relevant times to this action, employees were and are interchangeable between the Restaurant locations. On occasions where work shifts were

2

- understaffed at either Restaurant, Defendants transferred employees between the two Restaurants to resolve staffing issues on an as-needed basis. *See* Emeterio Decl. ¶ 8.

- Plaintiff and his co-workers engaged in numerous conversations throughout the course of their employment regarding the manner in which they were subjected to the same unlawful timekeeping policies. *See* Emeterio Decl. ¶¶ 2–11.

- Defendants' own employment documents additionally reflect a common ownership of the Restaurants. *See* **Exhibit E** (Defendant's copy of Plaintiff's weekly pay stub dated January 3, 2012, which unambiguously states "Remedy Diner" at the top of the page, yet includes an indemnification provision for "Jax Inn Restaurant Corp." on the same document).

While any of the foregoing uncontroverted facts may be sufficient in and of themselves to give rise to the plausible *inference* that Defendants collectively own and operate the Restaurants as a single-integrated enterprise, certainly the combination thereof all but *proves* the same.

    **B.**    **Plaintiff Has Made a Modest Factual Showing to Support the Inference that Defendants Engaged in a Common Policy, Practice, or Scheme in Violation of the FLSA**

While Defendants insist that the timekeeping inconsistencies amply set forth by Plaintiff in his Memorandum essentially amount to isolated occurrences, this argument is unavailing on two obvious grounds. First, nothing in their argument detracts from the facial implausibility of how their weekly totals sheet for Plaintiff's hours worked from April 2018 to January 2019 amount to *exactly* forty hours (40) each week; and that from January 2019 to May 2019, Plaintiff worked *exactly* forty-five hours (45) each week. *See* **Exhibit F**. Second, and more concerning for Defendant, is that the samples provided by Plaintiff to illustrate the deficiencies and inconsistencies of Defendants' timekeeping records are just that—representative examples.

Specifically, Defendants argue that **Exhibits G–H** are not indicative of a **consistent** policy of (1) rounding, (2) timeshaving, and (2) a failure to pay overtime. Defendants dispute Plaintiff's assertion that **Exhibits G–H** are examples of the FLSA violations found throughout the

3

documents provided by Defendants. In short, Defendants claim that the violations found in these exhibits were cherrypicked by Plaintiff and are mere aberrations. Yet, the records provided in **Exhibits G–H** serve as mere examples of Defendants time shaving and illegal rounding, which is seen throughout Defendants produced discovery, and which occurred throughout Plaintiff's employment. Attached hereto as **Exhibit I** are true and correct copies of Defendants' Records of Plaintiff's Weekly Pay Stubs and Time Punch Cards, from July 2018 to May 2019, less pages from the same that were fully or substantially redacted by Defendants. As further evidence of the appropriateness of **Exhibit G-H** as representative examples, Plaintiff's timecard for the pay week ending on November 18, 2018 shows a total of 50.4 hours worked, yet Defendants represented total on the calculation of hours worked states 50 hours. *See* **Exhibit I** at bates stamped pages 163–64. For the pay week ending on April 21, 2019, Plaintiff's timecard shows a total of 57.8 hours, yet Defendants' represented total on the calculation of hours worked states 56 hours. *See* **Exhibit I** at bates stamped pages 271–72. A thorough review of the Exhibits reveals that FLSA violations consistently throughout Plaintiff's employment with Defendants.

Furthermore, **Exhibit F** shows that Plaintiff was paid a straight rate without overtime for the entirety of Plaintiff's employment, which is a clear violation of the FLSA. From January 18, 2019 to April 30, 2019, Plaintiff was paid 45 hours each week in straight time with no overtime premium. Therefore, Defendants own produced documents are not only inconsistent, but also clearly show a constant policy and practice for not paying Plaintiff for all hours, including overtime worked.

In addition, Defendants' *own* Employee Handbook for Remedy Diner indicates that Defendants knowingly engage in a policy and practice of time-shaving. Attached hereto as **Exhibit J** is a true and correct copy of Defendants' 2012 Employee Handbook issued to and

signed by Plaintiff. In highly relevant part, Defendants state, at page 6 of 30 of the same (under "Schedules"): "We recommend that you arrive for your shift with enough time to make sure you're ready to work when your shift begins. While not required, we suggest that you arrive 10 to 15 minutes before your shift begins so that you have time to get settled and ready for your shift." Defendants thus encourage Plaintiff and other similarly situated employees to consistently arrive at the Restaurant 10 to 15 minutes prior to the start of their scheduled shifts; however, Plaintiff and similarly situated employees were and are not compensated for this time because they were and are unable to actually clock-in for their shift until their scheduled time.

Furthermore, Plaintiff has provided a Declaration. The Declaration provides that Defendants failed to pay the Plaintiff for all hours worked due to a policy of requiring employees to work off the clock. Furthermore, the declaration identifies fellow co-workers of all positions, who worked at both Restaurants, by name who experienced similar issues. *See* Emeterio Dec. ¶¶ 2. Plaintiff testifies that he frequently had conversations with his co-workers and determined that they were subject to the subject to the same unlawful policies as other employees employed at Defendants' Restaurants. *See* Emeterio Dec. ¶¶ 2–7. Plaintiff further set forth in detail where these conversations took place, when, and with whom. *Id.* Plaintiff has therefore more than satisfied the burden necessary to warrant conditional certification.

Plaintiff's Declaration is clearly sufficient to support conditional certification. Contrary to Defendants assertions, it is well-settled that statements regarding "first-hand knowledge" such as those in Plaintiff's Declaration are viewed as true for purposes of conditional collective certification motions. *See Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 662 (S.D.N.Y. 2009) ("Defendants' argument that plaintiffs' declarations are comprised of… conclusory allegations based on impermissible hearsay is of no moment" for purposes of FLSA collective

5

certification motion); *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 321-22 (S.D.N.Y.2007); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011).

Plaintiff clearly describes Defendants' unlawful compensation policies and practices. Plaintiff identifies specific conversations he had with his coworkers Maria [LNU], Mohammed [LNU], Freddy [LNU], Faustino [LNU], Raymundo [LNU], and Rogelio [LNU] about how their pay did not include wages for all their hours worked. *See* Emeterio Decl. ¶¶ 2–8. Plaintiff has therefore sufficiently set forth Defendants' timekeeping practices that violate the FLSA, and the manner in which Plaintiff and other potential collective action members suffered from Defendants' practices.

Defendants' arguments require a factual evaluation of the merits of Plaintiff's claims as well as credibility determinations. *See Lynch v. U.S. Auto. Assoc.*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."). Any merits-based argument "is an improper ground on which to base a denial of a motion to certify conditionally an FLSA collective action." *Anglada v. Linens 'N Things, Inc.*, 2007 WL 1552511 at *7 (S.D.N.Y. Apr. 26, 2007); *Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) ("Weighing of the merits is absolutely inappropriate.") As such, Defendants have failed to set forth any good reason why Plaintiff's motion should not be granted in its entirety.

Through his Declaration, Complaint, and Memorandum, Plaintiff has made the "modest" factual showing necessary for conditional certification. For Courts in the Second Circuit submitting a single affidavit which details conversations with other employees, even if hearsay, have repeatedly been ruled to be sufficient for collective certification. There is a long line of

cases which have repeatedly affirmed this, most recently in *Cuaya v. VI Dev. Grp., LLC*, 2020 U.S. Dist. LEXIS 166324, at *17-18 (S.D.N.Y. Sep. 10, 2020). The Court in *Cuaya*, also reaffirmed the concept at this stage, the court does not make factual determinations and will construe all factual conflicts in favor of the Plaintiff making the collective motion. *Id*. at *23 n.5

Defendants state that Plaintiff's allegations in his Declaration are vague, conclusory allegations, devoid of any detailed personal knowledge and fail to provide the basis for conditional certification.

However, as detailed above, Plaintiff's allegations are not the vague and conclusory allegations Defendants claim them to be. In his Declaration, Plaintiff has specifically provided the names and conversations of other employees that suffered from Defendants policy of not paying wages for all hours worked. Plaintiff has identified several other individuals, who work the same position he does, with whom he has discussed with Defendants policy of not paying all wages for hours worked. In addition, Plaintiff has identified several individual employees of Defendants and specific conversations had regarding Defendants policy of not paying wages for all hours worked. For example, in his Declaration Plaintiff states that he would have frequent discussions with Maria LNU, Mohammed LNU, Raymundo LNU, and Rogelio LNU on rides on the F train once their shifts were over about how Defendants were ripping them off. *See* Emeterio Decl. ¶¶7. Furthermore, Plaintiff has provided personal knowledge and experience suffering from Defendants illegal policy. Courts have found that this kind of evidence satisfies the "modest factual showing" that potential plaintiffs exist who are "similarly situated" to him. *See Leonardo v. ASC, Inc.,* No. 18-CV-3657 (VEC), 2018 WL 5981996, at *2 (S.D.N.Y. Nov. 14, 2018); *Campos v. Lenmar Rest. Inc.*, No. 18- CV-12359 (KPF), 2019 WL 6210814, at *4 (S.D.N.Y. Nov. 21, 2019) (collective of bussers and servers certified based on plaintiff's

affidavit describing defendants' violations against him, combined with specific details of conversations with named coworkers).

Plaintiff has thus shown that he is sufficiently similarly situated to all employees of Defendants' Restaurants. Furthermore, Defendants have not refuted or validly proved that Defendants' policies are applicable only to Plaintiff. Plaintiff's Declaration, Complaint, and Memorandum, along with Defendants' documents, all support the claim that all employees should be included in the class. As such, Plaintiff has met the low burden of certifying this action as an FLSA collective action and therefore his Motion should be granted.

## II. Additional Factual Support from the Deposition of Peter Giannopoulos and Anastasios Giannopoulos

The depositions of Peter Giannopoulos ("Peter") and Anastasios Giannopoulos ("Anastasios") were taken on December 3, 2020. The original date was November 30, 2020, but it was adjourned by Defendants' counsel for personal reasons. Because the depositions took place only one day before this Reply was due, Plaintiff was not able to obtain the necessary transcripts. The deposition of Peter is also incomplete because Defendant's counsel needed to leave early at 4:15 p.m. for personal reasons. However, despite the incomplete depositions, it is important to note all the supporting facts admitted by Defendants in the deposition testimonies of December 3, 2020, as detailed below:

- At least eighty (80) percent of the ownership of Jax Inn Diner and Remedy Diner are held by Peter and Anastasios.
- Peter G is in charge of operations and possesses ultimate authority over employee issues.
- When employees have questions, they speak with Peter for answers.
- However, even though Peter is the person who is ultimately responsible for setting wage policies at both Remedy Inn and Jax Inn Diner, he could not explain: what a tip credit is, what the requirements for taking a tip credit are, what a meal

- credit is, what the requirements of a meal credit are; what spread of hours premium pay is, and what call in pay is.
- Peter could not properly calculate the overtime rate for tipped employees.
- It was the policy for all employees to come to work 15 to 10 minutes early, but they would not be paid for their actual punched-in time, but solely for their scheduled work hours. This policy applied to both employees at Remedy Diner and Jax Inn Diner, and for both front- and back-of-house employees.
- Peter admitted that for certain time periods, Plaintiff was paid on a straight time basis for his overtime hours, and that Plaintiff was shorted pay.
- Peter admitted that he has been subject to, and settled, many previous wage lawsuits from other employees
- Peter also admitted he had been audited by regulatory authorities for wage violations.
- Peter admitted that the wage statements of all employees were not accurate because he paid employees at both Remedy Diner and Jax Inn Diner in cash and off the books.
- Peter had to invoke the Fifth Amendment multiple times during the deposition in order to avoid self-incrimination.
- Peter admitted that Plaintiff was treated the same as all other employees and subject to the same employment policies as employees at Remedy Diner and Jax Inn Diner.
- Peter admitted that employees at Remedy Diner and Jax Inn Diner are all subject to the same employment policies that are set solely by him.
- Peter admitted that all employees at both Jax Inn Diner and Remedy Diner were subject to an automatic deduction of 30 minutes for a meal break and that such break time was not tracked.
- Peter admitted that when employees worked past their scheduled shift time, they would not be paid for such excess time, but only for their scheduled work time.
- Peter admitted that the employee manual which was produced for Remedy Diner, (*see* **Exhibit J** of this Reply), was written in 2012 and never updated. Peter admitted that they had an employee manual for Jax Inn Diner that was substantially the same as that of Remedy Diner, but they had not produced it in discovery (but agree to produce it with timing uncertain.)
- Peter admitted that Remedy Diner and Jax Inn Diner utilized the same book-keeper. even though such book-keeper was only paid by one of the entities.
- Remedy Diner and Jax Inn Diner shared the same payroll companies, social media vendor, and accountant, and utilize the same punch-clock system.

Based on the foregoing, it appears that Defendants' strategy in defending this motion is to run out the clock so that Plaintiff does not have sufficient factual support, even though documents are supposed to be timely provided in discovery. As the Court is aware, Defendants have yet to produce *any* class discovery or e-discovery documents, of which the dispute is on-

9

going.  rom delaying depositions to thwarting discovery production, Defendants have delayed production at every effort. However despite Defendants' counsel's termination of Peter Giannopoulos' deposition before its completion on December 3, 2020, Plaintiff has still been able to obtain significant proof of Defendants' miscreant ways, and respectfully requests leave to allow Plaintiff to support the findings detailed in this paragraph with a supplement citing the relevant sections form the deposition testimonies for the Court's convenience.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests the Court grant his motion to conditionally certify this case as a collective action in its entirety.

Dated: New York, New York  
December 4, 2020

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By:  */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)  
Lee Litigation Group, PLLC  
148 West 24th Street, 8th Floor  
New York, NY 10011  
Tel: (212) 465-1188  
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiff and the Class*